# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**LOUIS BENAVIDEZ,**

      **Petitioner,**

v.                                 **No. 15-cv-0262 LH/SMV**

**VINCENT HORTON and
HECTOR BALDERAS,**

      **Respondents.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Petitioner Louis Benavidez's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody [Doc. 1] ("Petition"), filed March 30, 2015.  Respondents answered on June 3, 2015.  [Doc. 9].  The Honorable C. LeRoy Hansen, Senior United States District Judge, referred this matter to me for analysis and recommendation of an ultimate disposition.  [Doc. 5].  Having considered the parties' submissions, the record, the relevant law, and being otherwise fully advised in the premises, I recommend that the claims be DENIED and the case be DISMISSED with prejudice.[1]

## Background

Petitioner is in custody pursuant to a valid Judgment, Sentence and Commitment, filed January 10, 2012, and a valid Stipulated Amendment to Judgment, Sentence and Commitment,

---

[1] Because the issues in the Petition can be resolved on the record, I find that an evidentiary hearing is unnecessary. *See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 858–59 (10th Cir. 2005) (where a § 2254 petition can be resolved on the record, an evidentiary hearing is unnecessary).

filed on August 20, 2014, in the Fourth Judicial District Court, San Miguel County, Cause No. D-412-CR-0200900254.  [Doc. 9-1] at 1–3, 4–5.

Petitioner's criminal charges stem from the fatal shooting of Kevin Duran on September 25, 2009, in Las Vegas, New Mexico.  [Doc. 9-2] at 74.  That evening, Petitioner traveled to Mr. Duran's home, called him outside, and spoke with him from his vehicle.  *Id.* at 76.  Mr. Duran stood outside the car, near the open driver's side window; Petitioner sat in the front passenger seat.  *Id.*  Petitioner then reached across the driver and shot Mr. Duran twice— once in the abdomen at point-blank range, and once in the back as he fled.  *Id.* at 74, 76–77. After the shooting, Petitioner drove to his ex-girlfriend's home; his ex-girlfriend reported feeling scared by Petitioner's nervous and unusual demeanor.  *Id.* at 78.  Petitioner then drove southbound toward Albuquerque at speeds up to 90 miles per hour.  *Id.*  Officers arrested him shortly thereafter.  *Id.*

On December 7, 2009, Petitioner was charged with an open count of murder and tampering with evidence.[2]  *Id.* at 78–79.  Petitioner pleaded not guilty to the charges.  A 5-day jury trial began on November 28, 2011.  *Id.* at 79.  The jury found Petitioner guilty on both counts.  *Id.* at 79–80; [Doc. 9-1] at 1.  On January 10, 2012, the state district court sentenced Petitioner to life imprisonment for the murder conviction and 3 years' imprisonment for the conviction of tampering with evidence, with the sentences to run consecutively.  [Doc. 9-1] at 2.

Petitioner appealed directly to the New Mexico Supreme Court ("NMSC").[3]  Notice of Appeal [Doc. 9-1] at 6.  The appeal was based on the following grounds: that the evidence was

---

[2] Petitioner was also charged with two other counts that were severed prior to trial and dismissed after trial. [Doc. 9-2] at 79.

[3] Under New Mexico law, criminal defendants are to appeal a state district court judgment imposing a sentence of life imprisonment directly to the NMSC.  N.M. Const. art. VI, § 2; Rule 12-102(A)(1) NMRA.

insufficient to support either conviction; that the trial court erred in denying his motions for mistrial following two instances of alleged jury contamination; and that the trial court erred in admitting into evidence the victim's dying statement that Petitioner was the shooter.  *See generally* [Doc. 9-2] at 80–97.  In a comprehensive opinion, the NMSC affirmed Petitioner's first-degree murder conviction and reversed his conviction of tampering with evidence.  *Id.* at 80–86.  The NMSC also affirmed the trial court's decisions concerning jury contamination and admissibility of evidence.  *Id.* at 86–97.

On August 14, 2014, Petitioner filed a petition for writ of habeas corpus in state district court.  [Doc. 9-3] at 1–7.  In his habeas petition, Petitioner claimed that trial counsel was ineffective in two respects: (1) for failing to seek a mental competency evaluation, raise as an issue his mental competency to stand trial, and to argue as a defense Petitioner's poor mental state on September 25, 2009; (2) for failing to call a "crucial witness," Elizabeth Bernadine Trujillo, at trial.  *Id.* at 2–5.  On August 20, 2014, the Honorable Gerald E. Baca, District Judge of the Fourth Judicial District of New Mexico, summarily dismissed the habeas petition on its merits.  *Id.* at 9.

Petitioner then filed a petition for writ of certiorari to the NMSC.  *Id.* at 13–17.  He reiterated his ineffective-assistance-of-counsel claim concerning his mental health, *id.* at 14–16, but he did not raise his claim regarding counsel's failure to call Ms. Trujillo at trial.  The NMSC denied the petition on November 25, 2014.  *Id.* at 31.

Petitioner filed his instant Petition under § 2254 on March 30, 2015.  [Doc. 1]. Respondents answered on June 3, 2015.  [Doc. 9].  Petitioner did not reply.  Petitioner raises various grounds for relief.  His first two grounds for relief echo his direct appeal to the NMSC.

First, he claims that his first-degree murder conviction is not supported by sufficient evidence. [Doc. 1] at 4.  Second, he claims that the trial court failed to correct two instances of alleged jury contamination, thus denying him of his right to a fair trial and an impartial jury.  *Id.* at 4–6.  Respondents concede that Petitioner has exhausted available state-court remedies as to both grounds for relief, as Petitioner raised these arguments in his direct appeal.  [Doc. 9] at 4–5.

Additionally, Petitioner claims that his trial counsel was constitutionally ineffective for (1) failing to investigate, evaluate, and raise as an issue Petitioner's mental competency to stand trial and failing to argue his ill mental health the day of the shooting, and (2) failing to call Ms. Trujillo[4] as a witness at trial.  [Doc. 1] at 6–7.  Respondents concede that Petitioner has exhausted state-court remedies as to the claim based on his mental health.  [Doc. 9] at 5.  However, they contend that the claim based on counsel's alleged failure to call Ms. Trujillo at trial is not exhausted and is subject to an anticipatory procedural bar.  *Id.* at 5, 7–9.

## Non-Exhaustion

A petitioner under 28 U.S.C. § 2254 must exhaust all available avenues of state-court review before a federal court may consider his claims on their merits.  28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears the applicant has exhausted the remedies available in the courts of the State . . . .").  A claim is exhausted where the state courts are given "the opportunity to pass upon and correct alleged violations of [their] prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (internal quotation marks omitted); *see also Picard v. Connor*, 404 U.S. 270, 277 (1971) (finding a claim for relief

---

[4] The instant Petition does not provide a name for the witness.  However, Petitioner raised the same claim in his state habeas petition and alleged that the witness was Elizabeth Bernadine Trujillo.  [Doc. 9-3] at 3–5.  In comparing the facts alleged here to those alleged in the state habeas petition, it is clear that the witness is the same.

unexhausted where the petitioner raised the claim in a petition for writ of certiorari to the state's highest court but had not raised the claim in the lower court); *Byrd v. Workman*, 645 F.3d 1159, 1164 n.7 (10th Cir. 2011) (noting that a state's highest court must be presented with a claim before exhaustion occurs).

The exhaustion of state remedies requires the petitioner to "fairly present" his federal claims to the state courts in order to give the state "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Picard*, 404 U.S. at 275; *see also Duncan*, 513 U.S. at 365 ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.").  While a petitioner need not cite "book and verse" to the Constitution or any particular source of federal jurisprudence, the petitioner must present "the substance" of his federal claim to the state court before it is fairly presented.  *Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997).

Respondents contend, and I agree, that one claim of ineffective assistance of counsel remains unexhausted.  Petitioner claims that trial counsel was ineffective for failing to call Ms. Trujillo at trial.  [Doc. 1] at 7.  Petitioner raised this ground in his state-court habeas proceeding, *see* [Doc. 9-3] at 4–5, but not in his subsequent petition for writ of certiorari to the NMSC, *see generally* [Doc. 9-3] at 13–16.  Accordingly, the claim was never fairly presented to the NMSC for review.  I find that Petitioner's claim of ineffective assistance for counsel's failure to call Ms. Trujillo at trial remains unexhausted.

## **Procedural Default**

In habeas proceedings, procedural default may preclude federal court review of an unexhausted claim. Procedural default occurs where a petitioner has "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."[5] *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). This is often referred to as an "anticipatory procedural bar." *See Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it."); *Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002). The Court generally does not address issues that are procedurally defaulted. *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011). "Procedural default is grounded in concerns of comity and federalism; it is not jurisdictional." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998) (citing *Coleman*, 501 U.S. at 750).

To preclude federal court review, "the defaulted state rule must be both 'independent' of federal law and 'adequate' to support the judgment." *Wood v. Milyard*, 721 F.3d 1190, 1192 (10th Cir. 2013) (quoting *Walker*, 131 S. Ct. at 1127). That is, "only a 'firmly established and regularly followed state practice' may . . . prevent subsequent review by this Court of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991); *see Wood*, 721 F.3d at 1193. The applicable state procedural rule must have been sufficiently clear at the time of the default to have put the petitioner on notice of what conduct was required. *Ford*, 498 U.S. at 423.

---

[5] Procedural default also occurs if the state court actually imposed a procedural bar. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). This second type of occurrence is not at issue here.

Where procedural default applies, the federal court may review the defaulted claim if the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Respondents argue that an anticipatory procedural bar applies to Petitioner's unexhausted claim of ineffective assistance for counsel's failure to call Ms. Trujillo at trial. [Doc. 9] at 7–9. If Petitioner were to return to state court to exhaust this claim, he would advance his claim via a second state habeas petition. Respondents contend that recently amended Rule 5-802(H) of the New Mexico Rules of Criminal Procedure "makes it unlikely that he would be able to present [his claim] anew in a second state habeas petition." *Id.* at 9.

I decline to find that the Court is precluded from review of the unexhausted claim based on procedural default. First, it is unclear that recently amended Rule 5-802(H)—or other New Mexico procedural rules—would be a procedural bar if Petitioner were to return to state court to exhaust his claim. Rule 5-802(H) was amended in 2014. The current version, effective as of December 31, 2014, reads:

> H. Second and successive petitions. If the petitioner has previously filed a petition seeking relief under this rule, the court shall have the discretion to:
> (1) dismiss any claim not raised in a prior petition unless fundamental error has occurred, or unless an adequate record to address the claim properly was not available at the time of the prior petition; and
> (2) dismiss any claim raised and rejected in a prior petition *unless there has been an intervening change of law or fact or the ends of justice would otherwise be served by rehearing the claim*.

Rule 5-802(H) NMRA (emphasis added). The rule allows state district courts wide discretion in disposing of second or successive habeas petitions where the claims mirror those raised in a

previous petition.  Rule 5-802(H) does not *require* that a state district court dismiss a claim rejected in a prior petition.  Rather, it allows discretion to dismiss such claims.  Thus, Petitioner may not be precluded from bringing a second state habeas petition containing his unexhausted claim.  Moreover, New Mexico law provides that a prisoner may file a habeas petition asserting a violation of constitutional rights "at any time." NMSA 1978, § 31-11-6(A).   The law also provides that "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." § 31-11-6(D).  As with Rule 5-802(H), § 31-11-6(D) does not completely preclude a state district court's review of a claim rejected in a prior petition.  Accordingly, I decline to find that Petitioner's unexhausted ineffective-assistance-of-counsel claim is procedurally defaulted here.

Second, assuming *arguendo* that Rule 5-802(H) acts as a procedural bar, Respondents have not shown that the statute precludes federal court review here.  The statute, as amended, became effective December 31, 2014, *i.e.*, after the NMSC denied Petitioner's application for writ of certiorari in his state habeas proceedings and just before he filed his Petition in this Court.  Respondents have made no showing as to how the statute applies.  I am left to wonder whether the statute applies to all second or successive petitions filed after December 31, 2014, or whether it applies more narrowly where the first habeas action has been initiated after that date.  As discussed above, a state procedural rule must be sufficiently clear and firmly established at the time of the default to bar federal court review.  *Ford*, 498 U.S. at 423.  I am not convinced that such is the case here.

I do not find that Petitioner's unexhausted claim is subject to an anticipatory procedural bar.  Accordingly, his claim remains a regular unexhausted claim.

**Addressing Mixed Petitions**

Because the Petition includes both exhausted and unexhausted claims, it is a "mixed

petition."  *See Rose v. Lundy*, 455 U.S. 509, 510 (1982) (utilizing the phrase "mixed petition").

When a court is presented with a "mixed petition," it may do one of four things:

> (1) dismiss the mixed petition in its entirety; (2) stay the petition
> and hold it in abeyance while the petitioner returns to state court to
> raise his unexhausted claims; (3) permit the petitioner to dismiss
> the unexhausted claims and proceed with the exhausted claims; or
> (4) ignore the exhaustion requirement altogether and deny the
> petition on the merits if none of the petitioner's claims has any
> merit.

*Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (internal citations omitted).  As

discussed further below, I find that none of Petitioner's claims has any merit.  I will ignore the

exhaustion requirement altogether and deny the petition on the merits.  *See id.*

**Standard for § 2254 Habeas Petitions**

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective

Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case.  A petition for habeas

corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued

detention.  A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any

claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

§ 2254(d).  "Even if a state court resolves a claim in a summary fashion with little or no

reasoning, [federal courts] owe deference to the state court's result."  *Paine v. Massie*, 339 F.3d

1194, 1198 (10th Cir. 2003).   The standard is "highly deferential" to state courts, and the Supreme Court has added that it is "difficult to meet," as it demands that state-court decisions be given the benefit of the doubt.   *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398, (2011) (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA,] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id*. at 405.   The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature." *Id*. Therefore, habeas relief under § 2254 may be granted only where the state court "applies a rule that contradicts the governing law set forth in Supreme Court cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003). Significantly, it is unnecessary for the state court to cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision makes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Court's] decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court [applied] clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76.

Pursuant to AEDPA, state court findings of fact are "presumed to be correct." § 2254(e)(1). Accordingly, petitioners challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented, *see* § 2254(d)(2), must show by clear and convincing evidence that the determination was factually erroneous. *See Miller-el v. Dretke*, 545 U.S. 231, 240 (2005); *Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

Lastly, where state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Pinholster*, 131 S. Ct. at 1398 (citing § 2254(d)(1)). That is, evidentiary hearings are not permitted in federal court on claims that the state courts decided on their merits. *Id.* at 1398–99; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted). Thus, summary decisions, even those completely devoid of any reasoning at all, can constitute decisions "on the merits" for purposes of AEDPA. *Richter*, 131 S. Ct. at 784.

## Analysis

### I.    Claim of Insufficient Evidence to Support the Murder Conviction

Petitioner contends that the State "failed to present sufficient evidence to prove that [he] possessed the requisite intent to commit first degree murder." [Doc. 1] at 4. Respondents argue that Petitioner's claim is meritless. [Doc. 9] at 11–13.

A conviction based on insufficient evidence violates the Due Process Clause of the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)); *see Williams v. Trammell*, 782 F.3d 1184, 1192 (10th Cir. 2015). In a habeas proceeding, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–19; *see Johnson v. Mullin*, 505 F.3d 1128, 1134 (10th Cir. 2007) ("[T]he controlling standard for insufficient evidence claims asserted by state habeas petitioners was established by the Supreme Court in *Jackson v. Virginia*."). In applying *Jackson*, courts look to state law to determine the essential elements of the crime at issue. *Jackson*, 443 U.S. at 324 n.16.

Under New Mexico law, "any kind of willful, deliberate and premeditated killing" constitutes first-degree murder. NMSA 1978, § 30-2-1(A)(1). "To support a conviction for first-degree murder by deliberate killing, the State must prove beyond a reasonable doubt that [the d]efendant killed [the victim] with the deliberate intention of taking away his life." *State v. Astorga*, 2015-NMSC-007, ¶ 58, 343 P.3d 1245, 1262 (citing NMRA, Crim. UJI 14-201). The New Mexico Uniform Jury Instructions, used in Petitioner's jury trial, provide:

> A deliberate intention may be inferred from all of the facts and
> circumstances of the killing. The word deliberate means arrived at

> or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. . . . . To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his [or her] reasons for and against such a choice.

NMRA, Crim. UJI 14-201; *see* [Doc. 9-2] at 82 (noting that the trial court gave the uniform jury instruction).  The State may prove deliberate intent using circumstantial evidence alone.  *See State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542.

On direct appeal, the NMSC found that sufficient evidence supported Petitioner's first-degree murder conviction.  [Doc. 9-2] at 81–85.  The court explained: "[t]he test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to conviction."  *Id.* at 80.  Viewing the evidence "in the light most favorable to the guilty verdict," *id.* at 80, the court examined whether a rational jury "could have found beyond a reasonable doubt the essential facts required for a conviction," *id.* at 81.  The court found that "the State presented an abundance of evidence" from which the jury could have found the requisite intent.  *Id.* at 82.  First, the court found, the jury could have found deliberate intent from witness testimony that Petitioner displayed a gun at his cousin's house just prior to the shooting.  *Id.* at 82.  Further, witness testimony and physical evidence of the victim's wounds demonstrated that Petitioner shot Mr. Duran first "at point-blank range" and then again "from behind as he ran, hunched over, away from his attacker."  *Id.* at 82–83.  The court explained that the jury further could have "inferred deliberate intent from [Petitioner's] demeanor and conduct after the killing."  *Id.* at 83.  And finally, the court found, "statements [Petitioner] made while incarcerated awaiting trial provided additional evidence of [his] lack of remorse and

consciousness of guilt." *Id*. at 84.  The court concluded that "a reasonable jury could have found that the State proved the elements of first-degree murder beyond a reasonable doubt, including the element of deliberate intent." *Id.* at 84–85.

Petitioner makes no argument as to how the NMSC's decision was either contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts in light of the evidence presented.  And in view of the evidence, I cannot say that the NMSC decision was contrary to, or an unreasonable application of, *Jackson*.  On the contrary, the decision conforms to clearly established federal precedent.  *See Early*, 537 U.S. at 8 (holding that a state court need not cite to—or even be aware of—applicable Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]").  Moreover, I am confident that the evidence supporting Petitioner's murder conviction was constitutionally sufficient.  I must defer to the NMSC's ruling and find that Petitioner's claim of insufficient evidence is without merit.

## II.    Claim of Alleged Jury Contamination

Petitioner claims that the trial court failed to correct two instances of jury contamination, thus denying him his right to a fair trial and an impartial jury.  [Doc. 1] at 4–6.  First, he claims that the court deprived him of a fair trial "when it failed to inquire of a juror of the effect . . . of her seeing Petitioner in shackles."  *Id.* at 4.  Second, he claims that the court "denied [him] a fair trial when it refused to question the jury concerning a comment made by a witness when leaving the stand."  *Id.* at 6.  Respondents contend that habeas relief is not warranted on this ground, and I agree.

A.     <u>Petitioner's claim as to a juror's possible observation of him in shackles is meritless.</u>

Petitioner alleges that a juror saw him "in restraints as he was getting into a jail transport vehicle [one day after trial] and thus learned of [his] custodial status." [Doc. 1] at 5. Shortly thereafter, defense counsel informed the trial court of the incident. *Id.* The court spoke to the transportation officer about what had happened. [Doc. 9-2] at 88. The transportation officer explained that as Petitioner was climbing, shackled, into the transportation van, one of the jurors came around the corner talking on her cell phone. *Id.* She nodded to the transportation officer as she passed; however, the officer was not sure whether she had seen Petitioner. *Id.* After the trial court heard the transportation officer's account, defense counsel moved for a mistrial, arguing that the juror's observation of Petitioner in shackles was per se prejudicial. *Id.* at 88–89. The court denied the motion on the ground that the jury had already heard evidence concerning Petitioner's incarceration. *Id.* at 89. The court also declined to voir dire the juror who may have seen defendant in shackles. *Id.* Instead, the court gave a curative instruction, reminding the jurors of their obligation to leave the court immediately after being excused for the day so as to avoid inappropriate interactions with the parties. *Id.* Petitioner now claims that the trial court deprived him of a fair trial by "fail[ing] to inquire of [the] juror of the effect . . . of her seeing Petitioner in shackles." [Doc. 1] at 4.

"The right to trial by an impartial jury is a fundamental concept of due process." *Burton v. Johnson*, 948 F.2d 1150, 1155 (10th Cir. 1991). However, the showing required to establish juror partiality is a high bar. To show juror partiality, a petitioner "must show that the juror had such a fixed opinion that he or she could not judge impartially." *Hale v. Gibson*, 227 F.3d 1298, 1319 (10th Cir. 2000) (citing *Irvin v. Dowd*, 366 U.S. 717, 722–23 (1961)). A showing of a

juror's "preconceived notion as to the guilt or innocence of the accused" does not rise to the level of partiality. *Id.*

The Fifth and Fourteenth Amendments "prohibit the use of physical restraints visible to the jury absent a trial court determination . . . that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). The use of shackling as a security measure in the courtroom is deemed "inherently prejudicial." *Gardner v. Galetka*, 568 F.3d 862, 890 (10th Cir. 2009) (citing *Illinois v. Allen,* 397 U.S. 337 (1970)). However, "in itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial. Such an incident must result in prejudice to violate due process, and the burden is on the defendant to show such prejudice." *United States v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006) (finding no prejudicial error from a juror's brief view of the defendant in shackles) (citations omitted).

On direct appeal, the NMSC ruled that the trial court did not abuse its discretion in declining to declare a mistrial or conduct individual voir dire. The NMSC explained that a juror's mere "inadvertent or insignificant exposure to a defendant in shackles is not sufficiently prejudicial to merit a new trial." [Doc. 9-2] at 90 (quoting *State v. Holly*, 2009-NMSC-004, ¶ 41, 145 N.M. 513) (internal quotation marks omitted). The court further noted that "New Mexico cases have held that the potential for prejudice caused by a juror's inadvertent exposure to a defendant in restraints is minimal when the evidence at trial has shown that the defendant is incarcerated." *Id.* at 91 (citing *State v. Mills*, 1980-NMCA-005, ¶ 15, 94 N.M. 17). The court found that it was "not clear whether the juror even noticed [Petitioner] as she passed by the transport van while talking on her cell phone." *Id.* at 91. "To the extent that the juror may have

seen [Petitioner]," the court went on, "any exposure was inadvertent and outside the courtroom," and "the jury had already heard evidence at trial indicating that Defendant was incarcerated." *Id.* at 91–92.  The NMSC concluded that the trial court acted within its discretion in providing curative instructions and denying the motion for a mistrial.  *Id.* at 92.

Petitioner has not alleged—much less made any showing of—prejudice resulting from the incident.  *See Jones*, 468 F.3d at 709.  Moreover, Petitioner makes no argument as to how the NMSC's ruling was either contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts.  In fact, the ruling is consistent with clearly established federal precedent.  *See Early*, 537 U.S. at 8.  The NMSC found that the juror's brief, inadvertent view of Petitioner in shackles—if it even happened—would have caused little prejudice, as the jury had already heard evidence of his incarceration.  Essentially, the court found no prejudice to violate Petitioner's due process rights. I must again defer to the NMSC's determination and find that Petitioner's claim is without merit.

B.  <u>Petitioner's claim as to a witness's inappropriate comment before the jury is meritless.</u>

During trial, a witness made an audible comment while passing by the jury box after leaving the witness stand.  [Doc. 9-2] at 92.  Petitioner alleges that the witness commented "they killed my family."[6]  [Doc. 1] at 6.  Defense counsel asked the court to question the jurors "to determine what, if anything, they had heard."  [Doc. 9-2] at 92–93.  The court denied the request and instead instructed the jurors to disregard anything the witness said after leaving the witness

---

[6] The NMSC decision reports: "The record reflects three different versions of the witness's remark: (1) [Petitioner] thought the witness said, 'They killed my family'; (2) the bailiff thought the witness said something about needing to get back to his family; and (3) the [state] district judge thought he heard the witness say, 'Why would they do that to my family?'" [Doc. 9-2] at 92.

stand. *Id.* at 93.  Petitioner now claims that the court "denied [him] a fair trial when it refused to question the jury concerning [the] comment . . . ."  [Doc. 1] at 6.

To prevail, Petitioner must establish that the witness's statement was "so unduly prejudicial that it rendered his trial fundamentally unfair."  *Payne v. Tennessee*, 501 U.S. 808, 825 (1991); *see Patton v. Mullin*, 425 F.3d 788, 800 (10th Cir. 2005) (denying habeas relief upon concluding that that a witness's remark of the defendant being an "ex-con" was a single, isolated occurrence with little effect on the jury verdict); *Nichols v. Sullivan*, 867 F.2d 1250, 1253 (10th Cir. 1989) (stating that "[the] state courts' evidentiary and procedural rulings may not be questioned unless [the habeas petitioner] demonstrates that the remark by [a] witness . . . was so prejudicial in the context of the proceedings as a whole that he was deprived of the fundamental fairness essential to the concept of due process").  The Supreme Court has recognized that a curative instruction can mitigate the effect of potentially prejudicial remarks at trial.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974); *see also Nichols*, 867 F.2d at 1253 (noting, in the context of a habeas petition, that a curative instruction to the jury "would have cured any possible prejudice" resulting from unsolicited remarks by a witness concerning the defendant's prior convictions).  Moreover, the Court presumes "that a jury will follow an instruction to disregard inadmissible evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant."  *Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987) (internal quotation marks and citations omitted).

On direct appeal, the NMSC explained that a trial court has "wide discretion to determine how to best address instances of potential juror contamination."  [Doc. 9-2] at 93.  The NMSC

distinguished between "inadvertent remarks made by a witness . . . and similar testimony intentionally elicited by the prosecutor." *Id.* The court recognized that a trial court may cure the prejudicial effect made by a witness's unsolicited remark by giving the jury a curative instruction. *Id.* The NMSC found that the witness's remark here "was neither solicited by the parties nor inherently prejudicial." *Id.* The court concluded that the trial court's curative instruction to the jury "was a proper, adequate remedy under the circumstances." *Id.*

Petitioner has not shown that the witness's comment was so prejudicial in the context of the proceedings as a whole as to render the trial fundamentally unfair. *See Patton*, 425 F.3d at 800. Moreover, Petitioner makes no argument as to how the NMSC's ruling was either contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. On the contrary, the ruling is consistent with well-established federal precedent. The witness's alleged statement was isolated and unsolicited. The trial court instructed the jury to disregard anything the witness said after leaving the witness stand. Petitioner has not established an "overwhelming probability" that the jury was unable to follow that curative instruction. *See Greer*, 483 U.S. at 766 n.8. Indeed, there is nothing to suggest that the jury did not adhere to the trial court's instruction, or that the witness's stray comment deprived Petitioner of a fair trial. I find that the NMSC's ruling was not contrary to, or an unreasonable application, of federal law, nor did it constitute an unreasonable determination of the facts in light of the evidence presented. Accordingly, I must defer to the state court's determination. I find that Petitioner is not entitled to habeas relief on this ground.

### III.  Claims Based on Ineffective Assistance of Counsel

A.   <u>The Standard</u>

In evaluating an ineffective-assistance-of-counsel claim, a court must measure defense counsel's performance by the two-pronged standard established by the Supreme Court in *Strickland*.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The *Strickland* standard requires a petitioner to demonstrate (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  *Id.*  To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  However, "[a] court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance."  *Richter*, 131 S. Ct. at 787 (internal quotation marks omitted).  To establish prejudice, a petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 131 S. Ct. at 792.  As a result, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The Court is not required to address both prongs of the *Strickland* standard if the petitioner makes an insufficient showing on one of the prongs.  *Strickland*, 466 U.S. at 697.

In the habeas context, the highly deferential *Strickland* standard is applied in tandem with the highly deferential § 2254(d) standard, and the resulting review is doubly deferential.  *Richter*, 131 S. Ct. at 788; *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  "When § 2254(d) applies, the question [for the reviewing court] is not whether counsel's actions were reasonable . . . [but]

whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential

standard." *Richter*, 131 S. Ct. at 788.  Furthermore, the Supreme Court has cautioned that

because "the *Strickland* standard is a general one, . . . the range of reasonable applications is

substantial." *Id.*

      B.    <u>Claim of Ineffective Assistance Based on Petitioner's Mental Health</u>

      Petitioner claims that counsel was ineffective (a) for failing to investigate, evaluate, and

raise as an issue his mental competency at the time of the trial, and (b) for failing to argue

Petitioner's mental incompetence on the day of the shooting.  [Doc. 1] at 6.  He alleges that he

was incompetent to stand trial in November and December of 2011.  *Id.*  He alleges a long

history of psychiatric problems dating back to 1990, including depression, anxiety, changes in

long- and short-term memory, unusual and bizarre thought content, hallucinations, dysphoria,

and problems associated with understanding the legal system.  [Doc. 1] at 6.  Petitioner further

alleges that

> [he had] been referred to psychiatry and psychotherapy
> intervention during that time period.  [Petitioner] has attempted
> suicide during this time frame.  [He] has a history of being
> hospitalized . . . , including admissions by various police agencies
> pursuant to their authority under the New Mexico Mental Health
> Code. [He] has been medicated with Zoloft and Librium. [He] has
> suffered at least two concussions.  [He] dropped out of school in
> the 9th grade because of his poor performance and low level of
> intellectual functioning and is illiterate and dyslexic.  [He] was
> placed in special education prior to his dropping out of school.
> [He] suffers from neurological, cognitive, and other organic
> problems and has been determined to be of low intelligence.

*Id.* at 6–7.  Petitioner contends that information concerning his poor mental health "was

available" to counsel, "yet counsel failed to act upon the information."  *Id.* at 7.  Petitioner

claims that he was "forced to endure a jury trial and all other phases of his criminal prosecution

while not competent, unable to comprehend the judicial system, his role, his attorney's role, the judge's role or to assist his attorney in his defense." *Id.*

Judge Baca summarily denied Petitioner's claim in the state habeas proceeding. [Doc. 9-3] at 9.   This Court "must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999).

Petitioner has not shown that he is entitled to habeas relief.   First, he has not shown that counsel was constitutionally deficient in failing to investigate, evaluate, or raise as an issue his mental competency to stand trial.   On habeas review, counsel's "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691.   A defendant is mentally competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and [if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).   A history of mental problems, psychotropic medication, and low intelligence alone do not establish incompetency to stand trial. *See Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir. 1995).   "Defense counsel is often in the best position to determine whether a defendant's competency is questionable." *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999).

The record is void of facts to support Petitioner's claimed mental incompetence at the time of the trial.   Petitioner claims a history of mental illness dating back to 1990.   Further, he

alleges that he is illiterate, of low intelligence, dyslexic, and that he was placed in special education prior to dropping out of school in ninth grade. But even if his allegations are true, Petitioner's history of mental illness, illiteracy and learning disabilities, and medication does not equate to mental incompetency *at the time of his trial.* He offers nothing—apart from conclusory assertions as to his mental incompetence in November and December of 2011—that he lacked mental competency *during* his criminal proceedings. *See Miles*, 61 F.3d at 1474. Nothing indicates that he was incompetent to stand trial under the test defined in *Dusky*. Indeed, nothing in the record indicates that Petitioner was anything other than lucid at the time of the trial, or that he did not understand the State's charges. In light of the circumstances, it was not completely unreasonable that counsel did not investigate, evaluate, or raise as an issue Petitioner's competency to stand trial. *See Strickland*, 466 U.S. at 690–91.

Nor has Petitioner established counsel's deficient performance in failing to argue his ill mental health on September 25, 2009 (the day of the shooting). An attorney's choice in advancing one defensive theory over another at trial is often a strategic decision. *See United States v. Prows*, 280 F. App'x 740, 742 (10th Cir. 2008) ("[A]ttorneys have wide latitude in making tactical decisions.") (citing *Strickland*, 466 U.S. at 689). An attorney is not constitutionally required to make specific arguments—or even the best argument—during a criminal proceeding. *See id.* (explaining that an attorney's decision "not to make the exact arguments that [the habeas petitioner] desired, standing alone, [does] not demonstrate that the attorney's decisions were so completely unreasonable as to constitute ineffective assistance"). For counsel's decisions concerning trial strategy to be constitutionally deficient, they must be "completely unreasonable, not merely wrong, so that they bear no relationship to a possible

defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation marks and alteration omitted).

Counsel argued vehemently throughout trial that the evidence simply did not prove Petitioner's guilt. *See* [Doc. 9] at 19–20 (citing the record). As Respondents contend, a defensive theory concerning Petitioner's mental health at the time of the shooting may have been inconsistent with counsel's chosen defenses. [Doc. 9] at 20; *see Bryan v. Mullin*, 335 F.3d 1207, 1223 (10th Cir. 2003) (holding that counsel's strategic decision not to present evidence of a defendant's mental illness during the penalty stage of a capital murder trial was "reasonable when viewed from [counsel's] perspective at the time of the trial," as the defendant was "adamant about pursuing an innocence defense during the guilty phase of his trial"). But more to the point, counsel's decision to advance certain defenses at trial was a strategic decision. Counsel was not constitutionally required to advance the particular argument Petitioner discusses here. Petitioner has not established that counsel's decision was completely unreasonable, so as to bear no relationship to any possible defense strategy. Thus, Petitioner has failed to establish that counsel's performance was constitutionally deficient.

Moreover, assuming *arguendo* that counsel's performance was constitutionally deficient—which I do not find—Petitioner has not established prejudice. He argues that he was "forced to endure a jury trial and all other phases of his criminal prosecution while not competent," unable to comprehend his role or assist in his own defense. [Doc. 1] at 7. However, Petitioner makes no argument as to how the result of his criminal proceedings would have differed if counsel had chosen to pursue a defense based on incompetency. *See Strickland*, 466 U.S. at 694.

As Petitioner has established neither deficient performance nor prejudice, his ineffective-assistance-of-counsel claim concerning his mental health is meritless.  I find that Judge Baca's decision to deny habeas relief does not contravene or unreasonably apply clearly established federal law, nor is based on an unreasonable determination of the facts in light of the evidence presented.  *See Aycox*, 196 F.3d at 1178.  Accordingly, I must defer to Judge Baca's decision and find that Petitioner's claim based on his mental health does not provide grounds for habeas relief.

      C.      <u>Claim of Ineffective Assistance for Counsel's Failure to Call Ms. Trujillo as a Witness</u>

Petitioner alleges that a witness "who lived a very short distance from the scene of the shooting" was at home and heard gun fire at the time of the shooting.  [Doc. 1] at 7.  He alleges that the witness, Elizabeth Bernadine Trujillo, "heard someone running in front of her house" moments after the gunshots "and saw a man with a hand gun running away from the scene of the shooting."  *Id.*  Petitioner claims that trial counsel was constitutionally ineffective because, although Ms. Trujillo was present and ready to testify at trial, counsel "failed, or forgot," to call her.[7]  *Id.*

---

[7] In his state habeas petition, Petitioner also alleged the following concerning the witness, Ms. Trujillo:

> Several days [after the incident], Ms. Trujillo was questioned by a Las Vegas City Police Detective who interviewed her about her experience.  The Detective, seemingly unimpressed with what Ms. Trujillo witnesse[d], proposed that what Ms. Trujillo saw was not a gun in the neighbor's hand, but rather a cell phone.  Ms. Trujillo was adamant that she'd seen a gun.
>
> Ms. Trujillo was subpoenaed to testify at the trial of Defendant, however, Defense Counsel forgot to call her to the stand.  While awaiting to be called to testify, Ms. Trujillo overheard the same Las Vegas City Police Detective talking to one of the State's prime witnesses.  The witness asked the Detective "for her money" and the two exited the Courthouse.  Ms. Trujillo informed Defense Counsel of what she'd heard, however, counsel failed to [take] any action to pursue the matter, the question the witness or the detective.
> . . .
> Further, the witness, Ms. Trujillo, would have cast doubt upon the motivations

Judge Baca summarily denied Petitioner's claim in the state habeas proceeding. [Doc. 9-3] at 9.  That decision must be upheld unless this Court's review of the record and pertinent federal law indicates that it was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of facts in light of the evidence presented.  *Aycox*, 196 F.3d at 1178; *see* § 2254(d).

Petitioner has not established deficient performance.  The decision of whether or not to call a witness is a matter of trial strategy.  *Jackson*, 143 F.3d at 1320 (finding counsel's "informed tactical decision" not to call an alibi witness "not unreasonable").  For counsel's decisions concerning trial strategy to be constitutionally deficient, they must be "completely unreasonable . . . so that they bear no relationship to a possible defense strategy." *Fox*, 200 F.3d at 1296.  In his state habeas petition, Petitioner alleged that an investigating detective had been "unimpressed" with the Ms. Trujillo's story and had suggested that she saw a cell phone rather than a gun.  [Doc. 9-3] at 4.  In light of this, it is not difficult to imagine counsel's hesitancy in calling her to the stand.  But more to the point, Petitioner has not shown that counsel's tactical decision was so "completely unreasonable" as to rise to constitutionally deficient performance. *See Fox*, 200 F.3d at 1296.

Even assuming *arguendo* that trial counsel was constitutionally ineffective, Petitioner has not established prejudice.  Petitioner argues that "failure to call a witness whose testimony would cast doubt on Petitioner's guilt is clearly prejudicial."  [Doc. 1] at 7.  However, Petitioner makes

---

of the State's witness, colleen, in giving the testimony she gave.

[Doc. 9-3] at 4, 5.  In his federal habeas petition, Petitioner makes no mention of the alleged exchange between the police detective and a witness of the prosecution.

no showing—apart from this conjecture—that the result of his trial would have differed had Ms. Trujillo testified.  *See Strickland*, 466 U.S. at 694.

In his summary disposition, Judge Baca determined Petitioner's claim of ineffective assistance for counsel's failure to call a certain witness to be without merit.  On review, I agree. I find that Judge Baca's decision to deny habeas relief is not contrary to, or an unreasonable application of, clearly establish federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented.  *See Aycox*, 196 F.3d at 1178.  Thus, I must defer to Judge Baca's decision and find that Petitioner is not entitled to habeas relief on this claim.

<u>**CONCLUSIONS AND RECOMMENDED DISPOSITION**</u>

For the reasons set forth herein, I respectfully recommend that the Petition under § 2254 [Doc. 1] be **DENIED**, and that the action be **DISMISSED WITH PREJUDICE**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**