## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LOUIS BENAVIDEZ,

        Petitioner,

v.                                                                          CIV No. 15-0262 LH/SMV

VINCENT HORTON and
HECTOR BALDERAS,

        Respondents.


### ORDER OVERRULING OBJECTIONS AND ADOPTING
### MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 11] ("PF&RD"), issued on July 14, 2015.  On reference by the undersigned, [Doc. 5], the Honorable Stephan M. Vidmar, United States Magistrate Judge, found that all claims in Petitioner Louis Benavidez's[1] Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus . . . [Doc. 1] ("Petition") were without merit.  [Doc. 11] at 12–27.  Judge Vidmar recommended that the Court deny the claims and dismiss the case with prejudice.  *Id.* at 27.  Petitioner timely filed objections on July 30, 2015, [Doc. 13], and requests an evidentiary hearing, *id.* at 5–6.  The Court, being fully advised in the premises, will OVERRULE the objections, DENY Petitioner's request for an evidentiary hearing, ADOPT the PF&RD, DENY the Petition, and DISMISS the action with prejudice.

### BACKGROUND

Petitioner is in custody pursuant to a valid Judgment, Sentence and Commitment, filed January 10, 2012, and a valid Stipulated Amendment to Judgment, Sentence and Commitment,

---

[1] Petitioner is incarcerated and proceeding pro se.  [Doc. 4].

filed on August 20, 2014, in the Fourth Judicial District Court, San Miguel County, Cause No. D-412-CR-0200900254.  [Doc. 9-1] at 1–3, 4–5.

Petitioner's criminal charges stem from the fatal shooting of Kevin Duran on September 25, 2009, in Las Vegas, New Mexico.  [Doc. 9-2] at 74.  That evening, Petitioner traveled to Mr. Duran's home, called him outside, and spoke with him from his vehicle.  *Id.* at 76.  Mr. Duran stood outside the car, near the open driver's side window; Petitioner sat in the front passenger seat.  *Id.*  Petitioner then reached across the driver and shot Mr. Duran twice— once in the abdomen at point-blank range, and once in the back as he fled.  *Id.* at 74, 76−77. After the shooting, Petitioner traveled to his ex-girlfriend's home; his ex-girlfriend reported feeling scared by Petitioner's nervous and unusual demeanor.  *Id.* at 78.  Petitioner himself then drove southbound toward Albuquerque at speeds up to 90 miles per hour.  *Id.*  Officers arrested him shortly thereafter.  *Id.*

On December 7, 2009, Petitioner was charged with an open count of murder and tampering with evidence.[2]  *Id.* at 78–79.  He pleaded not guilty to the charges.  A 5-day jury trial began on November 28, 2011.  *Id.* at 79.  The jury found Petitioner guilty on both counts.  *Id.* at 79–80; [Doc. 9-1] at 1.  On January 10, 2012, the state district court sentenced Petitioner to life imprisonment for the murder conviction and 3 years' imprisonment for the conviction of tampering with evidence, with the sentences to run consecutively.  [Doc. 9-1] at 2.

Petitioner appealed directly to the New Mexico Supreme Court ("NMSC").[3]  Notice of Appeal [Doc. 9-1] at 6.  The appeal was based on the following grounds: that the evidence was

---

[2] Petitioner was also charged with two other counts that were severed prior to trial and dismissed after trial. [Doc. 9-2] at 79.
[3] Under New Mexico law, criminal defendants are to appeal a state district court judgment imposing a sentence of life imprisonment directly to the NMSC.  N.M. Const. art. VI, § 2; Rule 12-102(A)(1) NMRA.

insufficient to support either conviction; that the trial court erred in denying his motions for mistrial following two instances of alleged jury contamination; and that the trial court erred in admitting into evidence the victim's dying statement that Petitioner was the shooter.  *See generally* [Doc. 9-2] at 80–97.  In a comprehensive opinion dated November 7, 2013, the NMSC affirmed Petitioner's first-degree murder conviction and reversed his conviction of tampering with evidence.  *Id.* at 80–86.  The NMSC also affirmed the trial court's decisions concerning jury contamination and admissibility of evidence.  *Id.* at 86–97.

On August 14, 2014, Petitioner filed a petition for writ of habeas corpus in state district court.  [Doc. 9-3] at 1–7.  In his habeas petition, Petitioner claimed that trial counsel was ineffective in two respects: (1) for failing to seek a mental competency evaluation, to raise as an issue his mental competency to stand trial, and to argue as a defense Petitioner's poor mental state on September 25, 2009; (2) for failing to call a "crucial witness," Elizabeth Bernadine Trujillo, at trial.  *Id.* at 2–5.  On August 20, 2014, the Honorable Gerald E. Baca, District Judge of the Fourth Judicial District of New Mexico, summarily dismissed the habeas petition on its merits.  *Id.* at 9.

Petitioner then filed a petition for writ of certiorari to the NMSC.  *Id.* at 13–17.  He reiterated his ineffective-assistance-of-counsel claim concerning his mental health, *id.* at 14−16, but he did not raise his claim regarding counsel's failure to call Ms. Trujillo at trial.  The NMSC denied the petition on November 25, 2014.  *Id.* at 31.

Petitioner filed his Petition under § 2254 in this Court on March 30, 2015.  [Doc. 1].  He raised various grounds for relief.  First, he claimed that his first-degree murder conviction was not supported by sufficient evidence.  [Doc. 1] at 4.  Second, he claimed that the trial court failed

to correct two instances of alleged jury contamination, thus denying him of his right to a fair trial and an impartial jury. *Id.* at 4–6. Additionally, Petitioner claimed that his trial counsel was constitutionally ineffective for (1) failing to investigate, evaluate, and raise as an issue Petitioner's mental competency to stand trial and failing to argue his ill mental health the day of the shooting, and (2) failing to call Ms. Trujillo[4] as a witness at trial. [Doc. 1] at 6–7. Respondents answered on June 3, 2015. [Doc. 9]. Petitioner did not reply.

Judge Vidmar issued his PF&RD on July 14, 2015. Judge Vidmar first found that Petitioner's claim of ineffective assistance for counsel's alleged failure to call Ms. Trujillo at trial remained unexhausted. [Doc. 11] at 5. Judge Vidmar declined to find that an anticipatory procedural bar precluded review of the unexhausted claim, as Respondents argued in their response.[5] *Id.* at 7–8. Instead, he ignored the exhaustion requirement altogether and recommended denying the mixed petition on its merits. *Id.* at 9 (citing *Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009)). He then examined each claim on its merits and, finding each claim meritless, recommended denying the claims and dismissing the case with prejudice. Petitioner timely objected on July 30, 2015. [Doc. 13] at 1.

<u>STANDARD OF REVIEW FOR OBJECTIONS
TO MAGISTRATE JUDGE'S RECOMMENDATIONS</u>

A district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which is objection is made." 28 U.S.C. § 636(b)(1). "[O]bjections to the magistrate judge's report must be both timely and specific to

---

[4] The Petition does not provide a name for the witness. However, Petitioner raised the same claim in his state habeas petition and alleged that the witness was Elizabeth Bernadine Trujillo. [Doc. 9-3] at 3–5. In comparing the facts alleged here with those alleged in the state habeas petition, it is clear that the witness is the same.
[5] Neither side objects to Judge Vidmar's findings concerning exhaustion and procedural default.

preserve an issue for de novo review by the district court[.]"  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

STANDARD FOR § 2254 HABEAS PETITIONS

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case.  A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention.  A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d).  "Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result."  *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003).  The standard is "highly deferential" to state courts, and the Supreme Court has added that it is "difficult to meet," as it demands that state-court decisions be given the benefit of the doubt.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398, (2011) (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA,] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court

decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases."  *Id*. at 405.  The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature."  *Id*. Therefore, habeas relief under § 2254 may be granted only where the state court "applies a rule that contradicts the governing law set forth in Supreme Court cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  *Price v. Vincent*, 538 U.S. 634, 640 (2003). Significantly, it is unnecessary for the state court to cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]."  *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision makes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court [applied] clearly established federal law erroneously or incorrectly."  *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted).   "Rather, that application must be objectively unreasonable."  *Id.* at 76.

Pursuant to AEDPA, state court findings of fact are "presumed to be correct." § 2254(e)(1).   Accordingly, petitioners challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented, *see* § 2254(d)(2), must

show by clear and convincing evidence that the determination was factually erroneous. *See Miller-el v. Dretke*, 545 U.S. 231, 240 (2005); *Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

Lastly, where state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Pinholster*, 131 S. Ct. at 1398 (citing § 2254(d)(1)). That is, evidentiary hearings are not permitted in federal court on claims that the state courts decided on their merits. *Id.* at 1398–99; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted). Thus, summary decisions, even those completely devoid of any reasoning at all, can constitute decisions "on the merits" for purposes of AEDPA. *Richter*, 131 S. Ct. at 784.

## ANALYSIS

### I.      Claim of Insufficient Evidence to Support the Murder Conviction

In his Petition under § 2254, Petitioner argued that the State "failed to present sufficient evidence to prove that [he] possessed the requisite intent to commit first degree murder." [Doc. 1] at 4. The NMSC had examined the sufficiency of evidence on direct appeal and found that sufficient evidence supported Petitioner's first-degree murder conviction.  [Doc. 9-2] at 81−85. The court found that "the State presented an abundance of evidence" from which the jury could have found the requisite intent.[6] *Id.* at 82. The court concluded that "a reasonable

---

[6] First, the NMSC found, the jury could have found deliberate intent from witness testimony that Petitioner displayed a gun at his cousin's house just prior to the shooting.  [Doc. 9-2] at 82. Further, witness testimony and physical evidence of the victim's wounds demonstrated that Petitioner shot Mr. Duran first "at point-blank range" and then again "from behind as he ran, hunched over, away from his attacker." *Id.* at 82–83. The court explained

jury could have found that the State proved the elements of first-degree murder beyond a reasonable doubt, including the element of deliberate intent." *Id.* at 84–85.

In his PF&RD, Judge Vidmar found that Petitioner made no argument as to how the NMSC's decision was either contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts in light of the evidence presented. [Doc. 11] at 14. Accordingly, Judge Vidmar deferred to the NMSC's ruling and found that Petitioner's claim of insufficient evidence was without merit. *Id.* Petitioner now objects, reasserting the same arguments raised in his Petition. [Doc. 13] at 1–2. Petitioner broadly asserts that he "stands on [those] arguments" set forth in his Petition. *Id.* at 6.

Petitioner's objection will be overruled. First, the objection is not sufficiently specific to focus the Court's attention on the issue in dispute. *See One Parcel of Real Property*, 73 F.3d at 1060. Petitioner broadly reasserts his claim and arguments, but he offers no argument as to how the PF&RD is incorrect. That is, Petitioner does not explain why he believes that the ample evidence cited by the NMSC is not constitutionally sufficient.

Further, even examining the claim de novo, the Court agrees with Judge Vidmar and finds the claim meritless. A conviction based on insufficient evidence violates the Due Process Clause of the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). In a habeas proceeding, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19; *see Johnson v. Mullin*, 505 F.3d 1128, 1134 (10th Cir. 2007) ("[T]he controlling standard for insufficient evidence claims asserted by

---

that the jury further could have "inferred deliberate intent from [Petitioner's] demeanor and conduct after the killing." *Id.* at 83. And finally, the court found, "statements [Petitioner] made while incarcerated awaiting trial provided additional evidence of [his] lack of remorse and consciousness of guilt." *Id.* at 84.

state habeas petitioners was established by the Supreme Court in *Jackson v. Virginia*.").   In

applying *Jackson*, courts look to state law to determine the essential elements of the crime at

issue. *Jackson*, 443 U.S. at 324 n.16.

Under New Mexico law, "any kind of willful, deliberate and premeditated killing"

constitutes first-degree murder.   NMSA 1978, § 30-2-1(A)(1).   "To support a conviction for

first-degree murder by deliberate killing, the State must prove beyond a reasonable doubt that

[the d]efendant killed [the victim] with the deliberate intention of taking away his life." *State v.*

*Astorga*, 2015-NMSC-007, ¶ 58, 343 P.3d 1245, 1262 (citing NMRA, Crim. UJI 14-201).   The

New Mexico Uniform Jury Instructions, used in Petitioner's jury trial, provide:

> A deliberate intention may be inferred from all of the facts and
> circumstances of the killing.   The word deliberate means arrived at
> or determined upon as a result of careful thought and the weighing
> of the consideration for and against the proposed course of action.
> A calculated judgment and decision may be arrived at in a short
> period of time. . . . . To constitute a deliberate killing, the slayer
> must weigh and consider the question of killing and his [or her]
> reasons for and against such a choice.

NMRA, Crim. UJI 14-201; *see* [Doc. 9-2] at 82 (noting that the trial court gave the uniform jury

instruction).   The State may prove deliberate intent using circumstantial evidence alone. *See*

*State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542.

Petitioner makes no argument as to how the NMSC's decision was either contrary to, or

involved an unreasonable application of, clearly established federal law, or was based on an

unreasonable determination of facts in light of the evidence presented.   In view of the evidence,

the Court cannot say that the NMSC decision was contrary to, or an unreasonable application of,

*Jackson*. *See* [Doc. 9-2] at 82–84.   On the contrary, the decision conforms to clearly established

federal precedent. *See Early*, 537 U.S. at 8 (holding that a state court need not cite to—or even

be aware of—applicable Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]"). Moreover, the Court is confident that the evidence supporting Petitioner's murder conviction was constitutionally sufficient. *See* [Doc. 9-2] at 82–84 (discussing evidence to support Petitioner's intent). The Court must defer to the NMSC's ruling and find that Petitioner's claim of insufficient evidence is without merit. Accordingly, Petitioner's objection is overruled.

## II.  Alleged Jury Contamination

In his Petition under § 2254, Petitioner claimed that the trial court failed to correct two instances of jury contamination, thus denying him his right to a fair trial and an impartial jury. [Doc. 1] at 4–6. First, he claimed that the court deprived him of a fair trial "when it failed to inquire of a juror of the effect . . . of her seeing Petitioner in shackles." *Id.* at 4. Second, he claimed that the court "denied [him] a fair trial when it refused to question the jury concerning a comment made by a witness when leaving the stand." *Id.* at 6. Judge Vidmar found that habeas relief was unwarranted based on Petitioner's allegation of jury contamination. [Doc. 11] at 14−19. Petitioner now objects to Judge Vidmar's findings. [Doc. 13] at 2–4; 6–7.

A.  <u>Petitioner's claim as to a juror's possible observation of him in shackles is meritless.</u>

In his Petition under § 2254, Petitioner alleged that a juror saw him "in restraints as he was getting into a jail transport vehicle [one day after trial] and thus learned of [his] custodial status." [Doc. 1] at 5. Shortly thereafter, defense counsel informed the trial court of the incident. [Doc. 1] at 5. The court spoke to the transportation officer about what had happened. [Doc. 9-2] at 88. The transportation officer explained that as Petitioner was climbing, shackled, into the transportation van, one of the jurors came around the corner talking on her cell phone. *Id.* She

nodded to the transportation officer as she passed; however, the officer was not sure whether she had seen Petitioner. *Id.* After the trial court heard the transportation officer's account, defense counsel moved for a mistrial, arguing that the juror's observation of Petitioner in shackles was per se prejudicial. *Id.* at 88–89. The court denied the motion on the ground that the jury had already heard evidence concerning Petitioner's incarceration. *Id.* at 89. The court also declined to voir dire the juror who may have seen defendant in shackles. *Id.* Instead, the court gave a curative instruction, reminding the jurors of their obligation to leave the court immediately after being excused for the day so as to avoid inappropriate interactions with the parties. *Id.* Petitioner claimed that the trial court deprived him of a fair trial by "fail[ing] to inquire of [the] juror of the effect . . . of her seeing Petitioner in shackles." [Doc. 1] at 4. Petitioner repeats these same allegations and arguments in his objections. [Doc. 13] at 2–3.

The NMSC examined this issue on direct appeal and concluded that the trial court did not abuse its discretion in providing curative instructions and denying the motion for a mistrial. [Doc. 9-2] at 92.

In the PF&RD, Judge Vidmar found Petitioner's claim to be meritless. The Fifth and Fourteenth Amendments "prohibit the use of physical restraints visible to the jury absent a trial court determination . . . that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). The use of shackling as a security measure in the courtroom is deemed "inherently prejudicial." *Gardner v. Galetka*, 568 F.3d 862, 890 (10th Cir. 2009) (citing *Illinois v. Allen,* 397 U.S. 337 (1970)). However, "[i]n itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial. Such an incident must result in prejudice to violate due process, and the burden is on the defendant to

show such prejudice." *United States v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006) (finding no prejudicial error from a juror's brief view of the defendant in shackles) (citations omitted).

Judge Vidmar found that Petitioner had not alleged, much less made any showing of, prejudice resulting from the incident. [Doc. 11] at 17. Finding further that Petitioner offered no argument as to how the NMSC's ruling was either contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts, Judge Vidmar deferred to the NMSC ruling and found the claim to be meritless. *Id.*

Petitioner objects. While acknowledging that a juror's brief view of a defendant in shackles "is not, in and of itself, sufficiently prejudicial," *id.* at 6, he suggests that the circumstances here were "inherently prejudicial," and he argues that the trial court's decision to "simply giv[e] a curative instruction was insufficient to expunge the inherent prejudice." *Id.* "The error here," he argues, is that the trial court "refused" to voir dire the juror who allegedly saw Petitioner in shackles. *Id.*

Petitioner's objection will be overruled. The issue here is not, as Petitioner suggests, whether the trial court adequately took measures to overcome an "inherently prejudicial" event. A juror's brief, inadvertent view of a defendant in shackles is not, in and of itself, inherently prejudicial. *Jones*, 468 F.3d at 709. Rather, the issue is whether Petitioner has established a constitutional deprivation—the denial of his right to a fair trial—arising from the mere possibility that a juror saw him in restraints outside the courtroom boarding the transport van. To show a constitutional deprivation, Petitioner must show that the alleged incident resulted in prejudice to violate due process. *Id.* Moreover, this Court cannot grant habeas relief unless the NMSC's decision on this issue was contrary to, or involved an unreasonable application of,

clearly established federal law, or was based on an unreasonable determination of facts in light of the evidence presented. § 2254(d).

Petitioner offers nothing to show that the alleged incident resulted in prejudice so as to violate due process. *See Jones*, 468 F.3d at 709. Moreover, Petitioner makes no argument as to how the NMSC's ruling was either contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. In fact, the NMSC's decision is consistent with clearly established federal precedent. *See Early*, 537 U.S. at 8. The NMSC found that the juror's brief, inadvertent view of Petitioner in shackles outside the courtroom—if it even happened—would have caused little prejudice, as the jury had already heard evidence of his incarceration. [Doc. 9-2] at 91–92. Essentially, the NMSC found no prejudice. *See id.* The Court must again defer to the state court's determination and find that Petitioner's claim is without merit. Petitioner's objection is overruled.

B.  <u>Petitioner's claim as to a witness's unsolicited comment before the jury is meritless.</u>

During trial, a witness made an audible comment while passing by the jury box after leaving the witness stand. [Doc. 9-2] at 92. Petitioner alleged that the witness commented, "[T]hey killed my family."[7] [Doc. 1] at 6; [Doc. 13] at 3. Defense counsel asked the court to question the jurors "to determine what, if anything, they had heard." [Doc. 9-2] at 92–93. The court denied the request and instead instructed the jurors to disregard anything the witness said after leaving the witness stand. *Id.* at 93. Petitioner claimed that the court "denied [him] a fair

---

[7] The NMSC decision reports: "The record reflects three different versions of the witness's remark: (1) [Petitioner] thought the witness said, 'They killed my family'; (2) the bailiff thought the witness said something about needing to get back to his family; and (3) the [state] district judge thought he heard the witness say, 'Why would they do that to my family?'" [Doc. 9-2] at 92.

trial when it refused to question the jury concerning [the] comment . . . ."  [Doc. 1] at 6.
Petitioner repeats these same allegations and arguments in his objections.  [Doc. 13] at 3–4.

The NMSC examined this issue on direct appeal.  The court explained that a district court
has "wide discretion to determine how to best address instances of potential juror
contamination."  [Doc. 9-2] at 93.  The court distinguished between "inadvertent remarks made
by a witness . . . and similar testimony intentionally elicited by the prosecutor."  *Id.*  The court
recognized that a trial court may cure the prejudicial effect made by a witness's unsolicited
remark by giving the jury a curative instruction.  *Id.*  The NMSC ultimately found that the
witness's remark here "was neither solicited by the parties nor inherently prejudicial."  *Id.*  The
court concluded that the trial court's curative instruction to the jury "was a proper, adequate
remedy under the circumstances."  *Id.*

In the PF&RD, Judge Vidmar found Petitioner's claim as to the witness's comment to be
meritless.  [Doc. 11] at 17–19.  To establish a constitutional deprivation, Petitioner must
establish that the witness's statement was "so unduly prejudicial that it rendered his trial
fundamentally unfair."  *Payne v. Tennessee*, 501 U.S. 808, 825 (1991); *see Nichols v. Sullivan*,
867 F.2d 1250, 1253 (10th Cir. 1989) (stating that "[the] state courts' evidentiary and procedural
rulings may not be questioned unless [the habeas petitioner] demonstrates that the remark by [a]
witness . . . was so prejudicial in the context of the proceedings as a whole that he was deprived
of the fundamental fairness essential to the concept of due process").  The Supreme Court has
recognized that a curative instruction can mitigate the effect of potentially prejudicial remarks at
trial.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974).  Moreover, the Court presumes "that
a jury will follow an instruction to disregard inadmissible evidence unless there is an

overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987) (internal quotation marks and citations omitted).

Judge Vidmar found that Petitioner had not shown that the witness's comment was so prejudicial in the context of the proceedings as a whole as to render the trial fundamentally unfair. *See Patton*, 425 F.3d at 800. He further found that Petitioner had made no argument as to how the NMSC's ruling was either contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. Accordingly, Judge Vidmar deferred to the state court's determination and found the claim to be meritless.

Petitioner now objects. Apparently for the first time in any pleading, he alleges that the witness commented, "*He* killed my family." [Doc. 13] at 6 (emphasis added). Prior to his objections, Petitioner only alleged that the witness commented, "*[T]hey* killed my family." [Doc. 1] at 6 (emphasis added); *see* [Doc. 9-2] at 92; [Doc. 13] at 3. Petitioner argues that the PF&RD does not address the "real issue" here, which he believes is whether any member of the jury was influenced by the witness's alleged comment of "[h]e killed my family." [Doc. 13] at 6–7. He further contends that it was entirely possible that the jurors did not follow the trial court's curative instruction and "were prejudiced by the comments." *Id.* at 7.

Petitioner's objections will be overruled. The distinction between the alleged comment, "[T]hey killed my family," and the alleged comment, "He killed my family," is of no consequence. The question before the Court is not whether any member of the jury was, in fact, influenced by the witness's alleged comment. Rather, the question is whether Petitioner has

established that the witness's alleged comment was so prejudicial in the context of the proceedings as a whole that it rendered the trial fundamentally unfair.  *See Patton*, 425 F.3d at 800.  Moreover, this Court cannot grant habeas relief unless the NMSC's decision on this claim was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts in light of the evidence presented.  § 2254(d).

Petitioner has not shown that the witness's comment was so prejudicial in the context of the proceedings as a whole as to render the trial fundamentally unfair.  *See Patton*, 425 F.3d at 800.  Moreover, Petitioner has made no argument as to how the NMSC's ruling was either contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts.  To the contrary, on de novo review the Court finds that the ruling is consistent with well-established federal precedent.  The witness's alleged statement was isolated and unsolicited.  The trial court instructed the jury to disregard anything the witness said after leaving the witness stand.  And while Petitioner alleges that the jury may or may not have followed the curative instruction, [Doc. 13] at 7, he has not established an "overwhelming probability" that the jury was unable to follow that curative instruction.  *See Greer*, 483 U.S. at 766 n.8; *see also Patton v. Mullin*, 425 F.3d 788, 801 (10th Cir. 2005) (denying habeas relief for improperly admitted evidence in part because nothing in the record suggested the jury ignored the court's curative instruction).  Indeed, there is nothing to suggest that the jury did not adhere to the trial court's instruction, or that the witness's stray comment deprived Petitioner of a fair trial.  The Court finds that the NMSC's ruling was not contrary to, or an unreasonable application, of federal law, nor did it constitute an unreasonable determination

of the facts in light of the evidence presented. Accordingly, the Court must defer to the state court's determination and find that Petitioner is not entitled to habeas relief on this ground. Petitioner's objections are overruled.

## III.   Claims Based on Ineffective Assistance of Counsel

### A.   The Standard

In evaluating an ineffective-assistance-of-counsel claim, a court must measure defense counsel's performance by the two-pronged standard established by the Supreme Court in *Strickland*. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* standard requires a petitioner to demonstrate (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Id.* To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. However, "[a] court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (internal quotation marks omitted). To establish prejudice, a petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792. As a result, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The Court is not required to address both prongs of the *Strickland* standard if the petitioner makes an insufficient showing on one of the prongs. *Strickland*, 466 U.S. at 697.

In the habeas context, the highly deferential *Strickland* standard is applied in tandem with the highly deferential § 2254(d) standard, and the resulting review is doubly deferential. *Richter*, 131 S. Ct. at 788; *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). "When § 2254(d) applies, the question [for the reviewing court] is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S. Ct. at 788. Furthermore, the Supreme Court has cautioned that because "the *Strickland* standard is a general one, . . . the range of reasonable applications is substantial." *Id*.

B.    Claim of Ineffective Assistance Based on Petitioner's Mental Health

In his Petition under § 2254, Petitioner claimed that counsel was ineffective for (a) failing to investigate, evaluate, and raise as an issue his mental competency at the time of the trial, and (b) failing to argue Petitioner's mental incompetence on the day of the shooting. [Doc. 1] at 6. He alleged that he was incompetent to stand trial in November and December of 2011. *Id.* He alleged a long history of psychiatric problems dating back to 1990, including depression, anxiety, changes in long- and short-term memory, unusual and bizarre thought content, hallucinations, dysphoria, problems associated with understanding the legal system, and medication with Zoloft and Librium. *Id.* at 6. Petitioner further alleged illiteracy, "low intelligence," dyslexia, and placement in special education prior to dropping out of school. *Id.* at 6–7. Petitioner contended that information concerning his poor mental health "was available" to counsel, "yet counsel failed to act upon the information." *Id.* at 7. Petitioner claimed that he was "forced to endure a jury trial and all other phases of his criminal prosecution while not competent, unable to comprehend the judicial system, his role, his attorney's role, the judge's role or to assist his

attorney in his defense." *Id.*  Petitioner repeats these same allegations and arguments in his objections.  [Doc. 13] at 4–5.

In the state habeas proceeding, Judge Baca summarily denied Petitioner's claim. [Doc. 9-3] at 9.  This Court "must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999).

In his PF&RD, Judge Vidmar found that Petitioner's claim of ineffective assistance based on his mental health did not provide grounds for habeas relief.  [Doc. 11] at 25.  He found that Petitioner had not shown that counsel was constitutionally deficient, and that even if counsel had been constitutionally deficient, Petitioner had not established prejudice resulting from the alleged deficiency.  *Id.* at 22–24.  He further found that Judge Baca's decision did not contravene or unreasonably apply clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, Judge Vidmar found that Judge Baca's decision must be upheld.

Petitioner objects.  He contends that trial counsel was constitutionally deficient, as "no plausible, rational strategy or tactic can be argued for not raising [his] competence and mental state such 'that they bear no relationship to a possible defense strategy.'"  [Doc. 13] at 8. Petitioner further argues that the result of the trial would have differed had trial counsel presented evidence concerning his mental state and incompetence.  *Id.*  Finally, Petitioner asserts that "[h]e did not have the mental state to intend to kill anyone; he did not know the difference

between right and wrong; all of these matters pertain to whether he was guilty of the statutory offense charged." *Id.*

Petitioner's objections as to counsel's deficient performance and the resulting prejudice are overruled. First, his objections are conclusory and are not sufficiently specific to focus the Court's attention on the issue in dispute. *See One Parcel of Real Property*, 73 F.3d at 1060. Indeed, Petitioner does not specify which mental health subclaim his objections pertains to.

Further, even reviewing Petitioner's claim de novo, the Court agrees with Judge Vidmar's conclusion and will overrule the objections. First, Petitioner has not shown that counsel was constitutionally deficient in failing to investigate, evaluate, or raise as an issue his mental competency to stand trial. On habeas review, counsel's "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. A defendant is mentally competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and [if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). "Defense counsel is often in the best position to determine whether a defendant's competency is questionable." *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999).

The record is void of facts to support Petitioner's claimed mental incompetence at the time of the trial. Petitioner claims a history of mental illness dating back to 1990. [Doc. 1] at 6. Further, he alleges that he is illiterate, of low intelligence, dyslexic, and that he was placed in special education prior to dropping out of school in ninth grade. *Id.* at 6–7. But even if his allegations are true, Petitioner's history of mental illness, illiteracy and learning disabilities, and

medication does not equate to mental incompetency *at the time of his trial*.  He offers nothing—apart from conclusory assertions as to his mental incompetence in November and December of 2011—that he lacked mental competency *during* his criminal proceedings.  *See Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir. 1995) (history of mental problems, psychotropic medication, and low intelligence alone do not establish incompetency to stand trial).  Nothing indicates that he was incompetent to stand trial under the test defined in *Dusky*.  Indeed, nothing in the record indicates that Petitioner was anything other than lucid at the time of the trial, or that he did not understand the State's charges.  In light of the circumstances, it was not completely unreasonable that counsel did not investigate, evaluate, or raise as an issue Petitioner's competency to stand trial.  *See Strickland*, 466 U.S. at 690–91.

Nor has Petitioner established counsel's deficient performance in failing to argue his ill mental health on the day of the shooting.  An attorney's choice in advancing one defensive theory over another at trial is often a strategic decision.  *See United States v. Prows*, 280 F. App'x 740, 742 (10th Cir. 2008) ("[A]ttorneys have wide latitude in making tactical decisions.") (citing *Strickland*, 466 U.S. at 689).  An attorney is not constitutionally required to make specific arguments—or even the best argument—during a criminal proceeding.  *See id.*  For counsel's decisions concerning trial strategy to be constitutionally deficient, they must be "completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation marks and alteration omitted).

Counsel argued vehemently throughout trial that the evidence simply did not prove Petitioner's guilt.  *See* [Doc. 9] at 19–20 (citing the record).  As Respondents point out, a defensive theory concerning Petitioner's mental health at the time of the shooting may have been

inconsistent with counsel's chosen defenses.  [Doc. 9] at 20; *see Bryan v. Mullin*, 335 F.3d 1207, 1223 (10th Cir. 2003) (holding that counsel's strategic decision not to present evidence of a defendant's mental illness during the penalty stage of a capital murder trial was "reasonable when viewed from [counsel's] perspective at the time of the trial," as the defendant was "adamant about pursuing an innocence defense during the guilty phase of his trial").  But more to the point, counsel's decision to advance certain defenses at trial was a strategic decision. Counsel was not constitutionally required to advance the particular argument Petitioner discusses here.  Petitioner argues in his objections that counsel's decision bore no relationship to a possible defense strategy.  [Doc. 13] at 8.  But such conclusory assertions do not establish that counsel's decision was completely unreasonable, so as to bear no relationship to any possible defense strategy.  Thus, Petitioner has failed to establish that counsel's performance was constitutionally deficient.

Moreover, assuming *arguendo* that counsel's performance was constitutionally deficient—which the Court does not find—Petitioner has not established prejudice.  He argues that he was "forced to endure a jury trial and all other phases of his criminal prosecution while not competent," unable to comprehend his role or assist in his own defense.  [Doc. 1] at 7.  And he conclusorily argues that the result of his trial would have differed if not for counsel's alleged deficiency.  [Doc. 13] at 8.  However, Petitioner makes no argument as to how the result of his criminal proceedings would have actually differed if counsel had chosen to pursue a defense based on incompetency.  *See Strickland*, 466 U.S. at 694.

Finally, to the extent that Petitioner's assertions concerning his mental state at the time of the shooting may be construed as objections, they are overruled as irrelevant to this claim.

Petitioner asserts that he "did not have the mental state to intend to kill anyone[, and] he did not know the difference between right and wrong."   [Doc. 13] at 8.   He argues that these matters "pertain to whether he was guilty of the statutory offense charged."   *Id.*   The issue here, however, is not whether Petitioner had a certain mental state at the time of the shooting.   The issue is whether his counsel's decision not to raise such an argument was completely unreasonable, so that it bore no relationship to a possible defense strategy.   *See Fox*, 200 F.3d at 1296.   The objection is overruled as irrelevant.

On de novo review, the Court finds that Petitioner has established neither deficient performance nor prejudice, and his ineffective-assistance-of-counsel claim concerning his mental health is meritless.   The Court finds that Judge Baca's decision to deny habeas relief does not contravene or unreasonably apply clearly established federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented.   *See Aycox*, 196 F.3d at 1178.   Accordingly, the Court defers to Judge Baca's decision and finds that Petitioner's claim based on his mental health does not provide grounds for habeas relief.

C.      Claim of Ineffective Assistance for Counsel's Failure to Call Ms. Trujillo as a Witness

In his Petition under § 2254, Petitioner alleged that a witness "who lived a very short distance from the scene of the shooting" was at home and heard gun fire at the time of the shooting.   [Doc. 1] at 7.   He alleged that the witness, Elizabeth Bernadine Trujillo, "heard someone running in front of her house" moments after the gunshots "and saw a man with a hand gun running away from the scene of the shooting."   *Id.*   Petitioner claimed that trial counsel was constitutionally ineffective because, although Ms. Trujillo was present and ready to testify at

trial, counsel "failed, or forgot," to call her.  *Id.*  Petitioner repeats the same allegations and argument in his objections.  [Doc. 13] at 5.

Judge Baca summarily denied Petitioner's claim in the state habeas proceeding. [Doc. 9-3] at 9.  In the PF&RD, Judge Vidmar found that Petitioner had established neither deficient performance nor prejudice resulting from counsel's failure to call Ms. Trujillo as a witness.  He found that Judge Baca's decision to deny habeas relief was not contrary to, or an unreasonable application of, clearly establish federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  *See Aycox*, 196 F.3d at 1178. Accordingly, Judge Vidmar deferred to Judge Baca's decision and found that Petitioner was not entitled to habeas relief on this claim.  Further, Judge Vidmar found that an evidentiary hearing was unnecessary as to all claims in the Petition, [Doc. 11] at 1 n.1, including the claim of ineffective assistance for counsel's failure to call Ms. Trujillo at trial.

Petitioner objects to Judge Vidmar's finding that an evidentiary hearing is not necessary on this claim, and he requests a hearing.  [Doc. 13] at 5.  Petitioner argues that an evidentiary hearing is necessary to determine "the extent and relevancy" of the witness's testimony, and whether the witness's testimony does, in fact, "cast doubt on Petitioner's conviction."  *Id.*

Petitioner's objection will be overruled, and his request for a hearing will be denied.  The issue before the Court is not whether Ms. Trujillo's testimony casts doubt, or could have cast doubt, on the conviction.  Rather, the issue is whether trial counsel's failure to call Ms. Trujillo was so "completely unreasonable, . . . bear[ing] no relationship to a possible defense strategy," that it constituted deficient performance.  *Fox*, 200 F.3d at 1296.  Petitioner has not shown that counsel's tactical decision not to call Ms. Trujillo was so "completely unreasonable" as to rise to

constitutionally deficient performance.  *See id.*  Nor has Petitioner made any showing, apart from

mere conjecture, *see* [Doc. 1] at 7, that the result of his trial would have differed had Ms. Trujillo

testified.  *See Strickland*, 466 U.S. at 694.

Judge Baca determined Petitioner's claim of ineffective assistance for counsel's failure to

Ms. Trujillo to be without merit.  On de novo review, the Court agrees and overrules Petitioner's

objections.  Judge Baca's decision to deny habeas relief is not contrary to, or an unreasonable

application of, clearly establish federal law, nor is it based on an unreasonable determination of

the facts in light of the evidence presented.  *See Aycox*, 196 F.3d at 1178.  Thus, the Court must

defer to Judge Baca's decision and find that Petitioner is not entitled to habeas relief on this

claim.

<u>CONCLUSION</u>

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Petitioner's

objections [Doc. 13] are OVERRULED, his request for an evidentiary hearing is DENIED, and

the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 11] are

ADOPTED;

IT IS FURTHER ORDERED that Petitioner Louis Benavidez's Petition under 28 U.S.C.

§ 2254 for a Writ of Habeas Corpus by a Person in State Custody [Doc. 1] is DENIED, and his

habeas proceeding is DISMISSED with prejudice.

IT IS SO ORDERED.

_____

SENIOR UNITED STATES DISTRICT JUDGE